[No. F031202. Fifth Dist. Jan. 17, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES PERACCHI, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V, inclusive, of the Discussion.

354

## COUNSEL

Victor Blumenkrantz, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Robert P. Whitlock and Randall A. Pinal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

THAXTER, Acting P. J.—A jury convicted appellant, James Peracchi, of reckless driving while evading a police officer,[1] and being a felon in

---

[1]Vehicle Code section 2800.2.

possession of a firearm.[2] The jury acquitted appellant on an additional charge of assaulting a peace officer with a firearm.[3] In a bifurcated proceeding, the trial court found that appellant had suffered two prior convictions within the meaning of the three strikes law.[4]

The trial court sentenced appellant to two concurrent terms of 25 years to life.

Appellant contends that the trial court erred in failing to suppress a statement in violation of *Miranda*,[5] that there is insufficient evidence to support the evading conviction, that prejudicial evidence was improperly admitted at trial, and that his *Pitchess*[6] motion was improperly denied. He also raises two sentencing issues.

We will conclude that the conviction for reckless driving while evading a police officer must be reversed because appellant's incriminating statements admitted at trial were obtained in violation of *Miranda*, and we will remand for retrial on that count and resentencing. In all other respects we will affirm.

FACTS

At approximately 1:00 a.m. on June 20, 1996, California Highway Patrol Officers Gregory Taylor and John Layfield were on duty in a marked patrol vehicle driving east on North Avenue near Chestnut in Fresno County. Officer Taylor, who was driving the patrol car, noticed a red Volkswagen in front of him driving at a slow rate of speed and weaving. Suspecting that the driver of the red car was under the influence, Officer Taylor initiated a traffic stop. The vehicle pulled over immediately, and Officers Taylor and Layfield began approaching the car on foot. Before the officers could reach the front of the car, the red car sped off. The officers followed the red car which began swerving back and forth across both lanes of traffic, driving from shoulder to shoulder. The car continued driving in an erratic manner, slowing down as if it were going to stop and then suddenly speeding up.

The Volkswagen turned north on Willow Avenue and continued driving in an erratic manner. It slowed for a stop sign at Jensen Avenue but proceeded through the intersection without stopping. Jensen Avenue is comprised of

---

[2]Penal Code section 12021, subdivision (a)(1). All further statutory references are to the Penal Code unless otherwise indicated.
[3]Section 245, subdivision (d)(2).
[4]Sections 667, subdivisions (a)-(i), 1170.12, subdivisions (a)-(e).
[5]*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].
[6]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

two lanes of traffic in each direction and is positioned in such a way that one cannot see if cross traffic is approaching without coming to a complete stop. There was traffic on Jensen when the red car crossed the intersection. In crossing Jensen, the red car "bottomed out" and threw some sparks. There were marks on the roadway at that point indicating that other cars had done the same thing.

The car resumed its erratic driving pattern and ran another stop sign on Church Avenue, traveling about 20 to 30 miles per hour. Continuing on Willow to Butler Avenue, the car turned east, traveling through a stop sign at 30 miles per hour. The car sped up to 60 miles per hour approaching Peach Avenue. At the intersection of Butler and Peach there is a stop sign and a cement barrier preventing eastbound traffic from continuing across Peach. The car went through the stop sign and swerved into the westbound lane, traveled around the barrier, and continued heading east on Butler. Officer Taylor testified that a vehicle which was traveling west at that intersection had to take evasive action to avoid being hit by the red car.

After going through this intersection, Officer Taylor noticed grinding noises coming from the red Volkswagen, and the car slowed to 40 miles per hour. The car made a sharp left turn onto Minnewawa, traveling at approximately 30 to 40 miles per hour, which caused it to spin out and come to rest facing the wrong direction.

The vehicle chase lasted approximately four minutes and covered four miles. The car was driven in a serpentine manner throughout the chase at speeds ranging from 20 to 60 miles per hour in 40- to 50-mile-per-hour speed zones. Officer Taylor left his emergency lights on throughout the chase; however, he did not recall if he used his siren.

When the vehicle chase ended, two men exited the Volkswagen and ran toward nearby houses. The officers gave chase but were unable to find the men.

Officers Taylor and Layfield started to return to the Volkswagen to secure it. On the way back, Officer Layfield became separated from Officer Taylor when he stopped because he heard or sensed something. Officer Layfield shined his flashlight in the direction of a garbage can and a man jumped up, pointed a gun at him and told him not to move. The officer ran for cover, and the man began firing, striking him in the right leg. Officer Layfield returned fire, but the suspect was able to flee.

A substantial amount of evidence was produced at trial regarding who shot Officer Layfield. The jury ultimately acquitted Peracchi of the assault

on the police officer. Since the identity of the shooter is not an issue on appeal, we will not recount that evidence here.

Officers subsequently found Peracchi at 7:56 a.m. hiding in a shed a quarter of a mile from the shooting scene. A loaded, .45-caliber handgun wrapped in a black watch cap was found in the shed, along with a .45-caliber bullet.

A search of the Volkswagen, which belonged to Peracchi, disclosed two ski masks, a dent puller with a screw on the tip, a live .45-caliber bullet, a screwdriver and a pair of pliers.

In an interrogation, Peracchi admitted driving the Volkswagen and possessing the gun.

## I.  *Appellant's Miranda Rights Were Violated*

Before trial, Peracchi moved to exclude statements he made during a police interrogation on the basis that he had invoked his right to remain silent under *Miranda v. Arizona, supra*, 384 U.S. 436. To support his motion, defense counsel read a transcript of the tape-recorded interview:

"[DEFENSE COUNSEL]: They read him his rights. Then the question,

" 'Do you understand each of those rights I explained to you?'

" 'Uh-huh.' Then it says 'affirmative' in parens.

" 'Is that a yes?'

" 'Yes, I understand the rights.'

" 'Having those rights in mind, do you want to talk to us now about the charges you're being arrested [*sic*]?'

" 'At this point, I don't think so. At this point, I don't think I can talk.'

" 'Q   Why is that?'

" 'I just feel like my mind is not clear enough to discuss this. My mind is not clear enough right now. I need to be able I think. Right now isn't a good time.'

" 'Q   Okay. And you're saying the reason is because—'

" 'A    Uh—somethin'g—uh, I guess I don't want to discuss it right now. I guess I want—'

" 'Q    You want what?'

" 'I don't want to discuss it right now.'

" 'Q    Is it because you're too tired?'

" 'Not really. To be honest with you, not really. I mean, I'll give—I—I'll give you a little rundown maybe, but it's not going to be—go too deep about—that's what you want. It's not going—I didn't stop and that was it. Do you know what I mean?'

" 'Q    Why didn't—'

" 'I lost control.'

" 'Why didn't you stop.'

"[DEFENSE COUNSEL]: And the rest is—is questions about the incident."

After hearing this evidence, the trial court stated that there did not appear to be any coercion in questioning Peracchi about the reason he did not want to talk, and went on to find "that there's proof beyond a reasonable doubt that the defendant made a voluntary, knowing, and intelligent statement to the extent that he felt that he was only giving, I guess, a shortened version of it at that time."

■    In evaluating a claim of whether a defendant invoked his or her right to remain silent under *Miranda* we accept the trial court's factual findings and evaluations of credibility if supported by substantial evidence.[7] While we must undertake an independent review of the record to determine whether the right to remain silent was invoked,[8] we also " 'give great weight to the considered conclusions' of a lower court that has previously reviewed the same evidence."[9] Whether a suspect has invoked his right to silence is a question of fact to be determined in light of all of the circumstances, and the

---

[7]*People v. Box* (2000) 23 Cal.4th 1153, 1194 [99 Cal.Rptr.2d 69, 5 P.3d 130]; *People v. Wash* (1993) 6 Cal.4th 215, 235 [24 Cal.Rptr.2d 421, 861 P.2d 1107].

[8]*People v. Jennings* (1988) 46 Cal.3d 963, 979 [251 Cal.Rptr. 278, 760 P.2d 475]; *People v. Wash, supra,* 6 Cal.4th at page 236.

[9]*People v. Jennings, supra,* 46 Cal.3d at page 979; *People v. Wash, supra,* 6 Cal.4th at page 236.

words used must be considered in context.[10] We apply federal standards in reviewing appellant's claim that his statements were elicited in violation of *Miranda.*[11]

■ Pursuant to *Miranda,* "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."[12] The United States Supreme Court has recently affirmed that the *Miranda* warnings are rights of constitutional dimension.[13] The California Supreme Court has previously observed "that no particular form of words or conduct is necessary on the part of a suspect in order to invoke his or her right to remain silent (*People v. Randall*[, *supra*,] 1 Cal.3d 948, 955 . . .), and the suspect may invoke this right by any words or conduct reasonably inconsistent with a present willingness to discuss the case freely and completely. (*People v. Burton, supra,* 6 Cal.3d 375, 382.)"[14] However, if the defendant's invocation of the right to remain silent is ambiguous, the police may continue questioning for the limited purpose of clarifying whether he or she is waiving or invoking those rights,[15] although they may not persist "in repeated efforts to wear down his resistance and make him change his mind."[16] Once a defendant invokes his or her right to remain silent, that decision must be "scrupulously honored."[17]

■ Respondent argues Peracchi's response to the officer's questions regarding whether he would waive his right to remain silent was ambiguous and the officer was justified in clarifying why he wished to remain silent to ensure that Peracchi was indeed invoking that right. We disagree.

Respondent relies primarily upon three cases in making this argument.[18] In each of these cases the courts found that ambiguous statements made by the defendant did not amount to an assertion of the defendant's right to remain silent and that the police were justified in asking additional questions

---

[10]*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1238 [74 Cal.Rptr.2d 212, 954 P.2d 475].

[11]*People v. Crittenden* (1994) 9 Cal.4th 83, 129 [36 Cal.Rptr.2d 474, 885 P.2d 887].

[12]*Miranda v. Arizona, supra,* 384 U.S. at pages 473-474 [86 S.Ct. at page 1627]; see also *People v. Burton* (1971) 6 Cal.3d 375, 381 [99 Cal.Rptr. 1, 491 P.2d 793]; *People v. Randall* (1970) 1 Cal.3d 948, 954 [83 Cal.Rptr. 658, 464 P.2d 114], overruled on other grounds in *People v. Cahill* (1993) 5 Cal.4th 478 [20 Cal.Rptr.2d 582, 853 P.2d 1037].

[13]*Dickerson v. United States* (2000) 530 U.S. 428, 443-444 [120 S.Ct. 2326, 2336, 147 L.Ed.2d 405].

[14]*People v. Crittenden, supra,* 9 Cal.4th at page 129.

[15]*People v. Box, supra,* 23 Cal.4th at page 1194; *People v. Wash, supra,* 6 Cal.4th at page 239; *People v. Johnson* (1993) 6 Cal.4th 1, 27 [23 Cal.Rptr.2d 593, 859 P.2d 673].

[16]*Michigan v. Mosley* (1975) 423 U.S. 96, 105-106 [96 S.Ct. 321, 327, 46 L.Ed.2d 313].

[17]*Michigan v. Mosley, supra,* 423 U.S. at page 104 [96 S.Ct. at page 326].

[18]*People v. Wash, supra,* 6 Cal.4th 215, *People v. Johnson, supra,* 6 Cal.4th 1, and *In re Brian W.* (1981) 125 Cal.App.3d 590 [178 Cal.Rptr. 159].

to clarify the ambiguity relating to whether the suspect was invoking his rights and whether he understood those rights. They did not, as is the case here, question *why* the defendant wanted to invoke his rights. Thus, those cases provide little guidance here.

After being read his *Miranda* rights and asked whether he was willing to waive them, Peracchi stated he did not think he could talk at that moment. Although his initial statements to the officer regarding whether he was willing to waive his rights may have been ambiguous ("I don't think so. At this point, I don't think I can talk," "I need to be able I think," "I guess I don't want to discuss it right now"), his intent to remain silent became clear through further questioning. Ultimately, Peracchi stated, "I don't want to discuss it right now," clearly indicating that he intended to invoke his right to remain silent. Indeed, the officer's questions assumed that appellant did not wish to speak with them then and the questions focused solely on the reason why he did not want to do so. Unlike the cases respondent relied upon, the questions here were not directed at whether Peracchi was invoking his right to silence nor were they clarifying whether he understood his rights. Instead, the questions asked why he did not wish to waive his rights. This inquiry itself assumes that Peracchi had invoked his right to remain silent. Officers have no legitimate need or reason to inquire into the reasons why a suspect wishes to remain silent.[19]

Once Peracchi invoked his right to remain silent, the officer was required to cease questioning. As the court stated in *Miranda*: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."[20]

In *Michigan v. Mosley, supra,* 423 U.S. 96, the United States Supreme Court interpreted this passage and explained that permitting "the continuation of custodial interrogation after a momentary cessation would clearly

---

[19]*Anderson v. Smith* (2d Cir. 1984) 751 F.2d 96, 105; see *People v. Marshall* (1974) 41 Cal.App.3d 129, 135 [115 Cal.Rptr. 821] (defendant's reason for asserting his right to remain silent is immaterial).

[20]*Miranda v. Arizona, supra,* 384 U.S. at pages 473-474 [86 S.Ct. at pages 1627-1628], footnote omitted.

frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned."[21] The court held that the admissibility of a statement made by a suspect after that person invoked his or her right to silence depended upon whether the right to cut off questioning was "scrupulously honored."[22] One can hardly contend that Peracchi's right to remain silent was scrupulously honored. Despite Peracchi's invocation of his right to remain silent, the officer persisted in asking him questions regarding why he did not wish to speak with the officers at that time without even a momentary cessation in questioning. It was only after this repeated questioning that Peracchi eventually decided to give the officer a shortened version of the events. Because Peracchi had already invoked his right to remain silent, and the officer refused to scrupulously honor that request, Peracchi's statements should have been suppressed.

█ Pointing out that the officer's questions were not geared toward guilt or innocence but instead sought to discover why Peracchi did not wish to speak at that time, respondent impliedly argues that the officer's questions did not amount to interrogation within the meaning of *Miranda*. In *Rhode Island v. Innis*, the United States Supreme Court defined the term "interrogation" as used in *Miranda* as either express questioning or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."[23] Using this definition we must determine whether the officer's questions, which were directed at why Peracchi did not wish to speak at that time, were reasonably likely to elicit an incriminating response. On this point *Anderson v. Smith, supra,* 751 F.2d 105, is instructive.

The defendant in *Anderson* was arrested for murder. Anderson was advised of his *Miranda* rights, and at one point during an interrogation stated, "I done it." The officer then stated he wished to put the interrogation on videotape. At the beginning of the videotape interrogation, the officer again advised Anderson of his *Miranda* rights and asked Anderson "do you want to talk to me now?" Anderson replied, "No." Subsequently, the officer asked "You don't want to talk to me? Why?" Anderson replied, "I done told you already."[24] The questioning continued and Anderson eventually admitted he

---

[21]*Michigan v. Mosley, supra,* 423 U.S. at page 102 [96 S.Ct. at page 326].

[22]*Michigan v. Mosley, supra,* 423 U.S. at page 104 [96 S.Ct. at page 326].

[23]*Rhode Island v. Innis* (1980) 446 U.S. 291, 301 [100 S.Ct. 1682, 1689-1690, 64 L.Ed.2d 297], footnotes omitted.

[24]*Anderson v. Smith, supra,* 751 F.2d at page 98.

had something to do with the killing, relayed facts regarding the weapon used, and further stated that he had intended to rob the victim.[25] The Second Circuit held that the officer's inquiry into why Anderson did not want to speak was not a permissible clarifying question because Anderson had clearly invoked his right to remain silent.[26] Furthermore, inquiring into the reason why Anderson did not wish to speak to the police was an inquiry which the police should have known was reasonably likely to elicit an incriminating response. This is because the "interrogator never needs to know why a suspect wants to remain silent; once it is clear that the suspect wants to remain silent, the interrogation should cease. After all, the Fifth Amendment assumes that the suspect invokes his rights in order not to be a witness against himself; that is reason enough. An interrogator would only want to probe beyond the suspect's presumed desire to avoid self-incrimination if he expected either to evoke an incriminating response or to get a clue as to how the suspect might be persuaded to abandon his rights."[27] Like the officer in *Anderson*, the officer here had no reason to question Peracchi about his motivation for remaining silent. Indeed the facts of this case more strongly show that the officer's questions were designed to elicit an incriminating response than did the facts in *Anderson*. Peracchi invoked his right to remain silent before ever being questioned by the officer, unlike Anderson who, after confessing to the crime, suddenly exercised his right to remain silent. Peracchi never indicated in any manner that he was willing to speak with the officer, giving the officer little reason to inquire into Peracchi's unwillingness to talk. Yet the officer persisted in asking him why he did not wish to speak until Peracchi made incriminating statements. The only reason the officer had to continue questioning was to keep Peracchi talking and to eventually evoke an incriminating response. Because the officer continued interrogating Peracchi after he invoked his right to remain silent, Peracchi's statement should have been suppressed.

■ When a statement obtained in violation of *Miranda* is erroneously admitted into evidence, the conviction may be affirmed if the error is harmless beyond a reasonable doubt.[28] Applying the standard announced in *Chapman v. California*,[29] we find that the error was not harmless beyond a reasonable doubt in relation to the evading count. The only direct evidence placing Peracchi behind the wheel of the red Volkswagen was his statement made to the police. The evidence demonstrated there were two men in the

---

[25]*Anderson v. Smith, supra*, 751 F.2d at pages 98-99.

[26]*Anderson v. Smith, supra*, 751 F.2d at page 103.

[27]*Anderson v. Smith, supra*, 751 F.2d at page 105.

[28]*People v. Johnson, supra*, 6 Cal.4th at pages 32-33; *People v. Cahill, supra*, 5 Cal.4th at pages 509-510; *People v. Bey* (1993) 21 Cal.App.4th 1623, 1628-1629 [27 Cal.Rptr.2d 28].

[29]*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].

car, and there was a stipulation that the car belonged to Peracchi. From all the circumstantial evidence the jury may have reasonably inferred that he was the driver, but we cannot find beyond a reasonable doubt that the jury would have reached that conclusion had Peracchi's admission not been received in evidence.

Peracchi's conviction for possession of the handgun, however, need not be reversed. The evidence established that Peracchi was arrested in a shed located a quarter of a mile from the scene of the shooting. A loaded, Llama .45-caliber semiautomatic handgun was found in the shed wrapped in a black watch cap. Located next to the gun was a live .45-caliber bullet which was of the same type and brand as bullets found in the gun. A shirt and gloves were also found in close proximity to the gun. A live .45-caliber bullet was found in the Volkswagen between the driver and passenger seats. Two additional watch caps/ski masks were found in the backseat of the car. Given the fact that the gun was located in close proximity to Peracchi when he was arrested, that the gun was concealed in a watch cap, that a bullet matching the caliber of the bullets loaded in the gun was found in Peracchi's car, and the fact that additional watch caps/ski masks were also located within Peracchi's car, we conclude that the evidence overwhelmingly established that Peracchi was in possession of the handgun and that the jury would have come to the same result without the admission of Peracchi's statement that he possessed the gun. Since Peracchi's admission relating to the handgun was harmless beyond a reasonable doubt, that conviction will stand.

II.-V.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The conviction for evading a police officer is reversed. The matter is remanded for retrial on that count, if the prosecutor so elects, and for resentencing. In all other respects the judgment is affirmed.

Harris, J., and Buckley, J., concurred.

A petition for a rehearing was denied February 6, 2001, and appellant's petition for review by the Supreme Court was denied May 2, 2001.

---

*See footnote, *ante,* page 353.