Filed 9/25/14  P. v. Arenas CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LORENA MONSERRAT ARENAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B248107<br>(Super. Ct. No. 1348102)<br>(Santa Barbara County) |

Lorena Monserrat Arenas held her two-year old daughter's hands under scalding hot tap water causing second and third-degree burns to the child's hands and wrists.  A jury convicted her of torture (Pen. Code, § 206[1]), corporal injury to a child (§ 273d, subd. (a)), and child abuse (§ 273a, subd. (a)).  A charge of child abuse to a second child (count 4), a misdemeanor, was dismissed.  The court sentenced Arenas to life in prison with the possibility of parole in seven years.  Determinate sentences of five and six years for the child abuse convictions were stayed.  She appeals the judgment and contends the court erred (1) by refusing to allow her mother to testify about Arenas's personal history that arguably shows she had a mental impairment that diminished her ability to form the intent required for her to be guilty of the crime of torture; (2) by

---

[1] All statutory references are to the Penal Code unless otherwise specified.

refusing to dismiss the count charging her with torture; (3) by refusing to exclude some statements Arenas made to police; and (4) by limiting cross-examination of prosecution witness Jose Luis Gonzalez in violation of her due process and confrontation rights. She also contends that she is entitled to two additional days of presentence credits. We modify the judgment to include the two days of presentence credits and affirm in all other respects.

*FACTS AND PROCEDURAL HISTORY*

On April 19, 2010, the District Attorney of Santa Barbara County filed an information against Arenas and her then boyfriend, Jose Luis Gonzalez, alleging that they committed acts of torture and child abuse against their two-year-old and three-year-old daughters.

At about 4:30 a.m. on April 15, 2010, Arenas arrived with her two-year-old daughter at the Marian Hospital emergency room. She had walked there with the child in a stroller from her home four miles away. The child had severe second and third degree burns to her hands and wrists. She was screaming and shaking violently; the skin on her hands and forearms was peeling and "melted off." Medical personnel transferred the child to the Grossman Burn Center for treatment.

Detective Michael Huffman of the Santa Maria police department interviewed Arenas. He said: Arenas admitted that she intentionally burned her daughter. She stated that she was "very angry," "pissed off," and "depressed" because the child had been playing with her cosmetics. She admitted that she pinned the child against the bathroom sink and held her hands under hot running water for two to five minutes. Several times during the interview Arenas used the word "torture" and admitted that she had burned the child with tap water before. Although, Arenas went to a drugstore and bought some aloe salve to treat the burns, she and Gonzalez did not seek help from paramedics at the fire station directly across the street from their apartment. They waited nearly 12 hours before seeking emergency medical assistance from the Marian Hospital.

Santa Maria police officers tested the temperature of the hot water in the bathroom of Arenas's residence. Within three minutes, the temperature rose to 130

2

degrees and within four minutes, to 135 degrees. One officer described the sensation of 20 seconds of the hot water as "unbearable."

On November 10, 2010, the district attorney filed an information charging Arenas with torture and felony child abuse that inflicted great bodily injury upon her daughter. (§ 12022.7, subd. (d).) In December 2010, Arenas filed a section 995 motion to set aside counts 1 and 4 of the information asserting, among other matters, that her wrongful acts against her daughter do not fall within the legal meaning of torture. (§ 206 ["Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in [s]ection 12022.7 upon the person of another, is guilty of torture"].) The prosecutor opposed the motion, asserting that he presented sufficient evidence of the infliction of extreme pain and suffering upon the victim for revenge or sadistic purposes.

The trial court granted the motion to set aside count 1 pursuant to section 995. The People appealed the order. (§ 1238, subd. (a)(1).) We reversed and count 1 was reinstated. (*People v. Arenas* (Aug. 2, 2011, B230469) [nonpub. opn.].) We rejected Arenas's assertion that her acts were misguided discipline that differ in kind and severity from proof offered in torture-murder prosecutions and that her acts should be treated as child abuse not torture. (E.g., *People v. Steger* (1976) 16 Cal.3d 539; *People v. Walkey* (1986) 177 Cal.App.3d 268.)

Trial by jury began. After the People rested, Arenas moved to dismiss the count charging her with torture. (§ 1118.1) The court denied her motion. Arenas and her mother then testified and the matter was submitted to the jury.

*DISCUSSION*

*Arenas's Claimed Mental Impairment*

Arenas contends the trial court erred by not permitting her mother to testify about elements of Arenas's personal history. The proffered evidence was testimony about the delay in Arenas's ability to speak, her difficulties in school and her struggles with obesity. Defense counsel told the court Arenas's mother would testify about medications prescribed for Arenas that the family could not afford and would describe the effects that

3

teasing, an eating disorder and Gonzalez's intimidation and physical and emotional abuse of Arenas had on her mental state and depression. Defense counsel claimed the testimony was relevant to Arenas's credibility and was needed to allow the jury to "understand" her and be persuaded that she is not "a bad person" or a "cold-blooded, heartless, maniacal." Counsel also suggested Arenas's personal history gave "rise to a mental disorder that would qualify to neutralize specific intent."

"Evidence of a mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent . . . ." (§ 28, subd. (a).) Here, the trial court ruled that the proffered testimony from Arenas's mother would be received only as character evidence; viz., that Arenas's character trait was for non-violence. The court said that the testimony from Arenas's mother would not be received to show Arenas had a mental disorder or impairment that diminished her capacity to intentionally cause Arenas to suffer "cruel or extreme pain and suffering for . . . revenge . . . or [a] sadistic purpose." The trial court reasoned that expert testimony would be required to link Arenas's personal history to a mental disorder and to explain how it would affect her conduct.

We review the trial court's ruling for an abuse of discretion. (*People v. Horning* (2004) 34 Cal.4th 871, 901; *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10; *People v. Cortes* (2011) 192 Cal.App.4th 873, 908.) Here, there was no abuse of discretion in the observations and rulings of the trial court about the admissibility of the testimony proffered by Arenas. Expert testimony was undeniably required to link elements of Arenas's mental state to her conduct; specifically, that she suffered from a personality trait or mental defect or disorder that impaired her judgment and caused her to overreact to challenges presented by her children. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1116-1117; cf., *People v. Smithey* (1999) 20 Cal.4th 936; *People v. Aguilar* (1990) 218 Cal.App.3d 1556, 1569, disapproved on other grounds in *People v. Ervin* (2000) 22 Cal.4th 48, 90-91.)

4

*The Testimony of Jose Luis Gonzalez*

Arenas contends the court unreasonably limited her cross-examination of Jose Luis Gonzalez on a variety of topics. The contention is not borne out by the record. Gonzalez and Arenas were closely questioned about Gonzalez's reaction to the birth of his daughters and emotional and physical abuse he inflicted on Arenas. It is notable that the foreperson of the jury wrote the court a letter asking for leniency in sentencing Arenas because of the abuse to which she believed Arenas was subjected.

The trial court is permitted to put reasonable limits on the examination of witnesses and to suppress interrogation that is repetitive or only marginally relevant. (Evid. Code, § 352; *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679-680.) Arenas was permitted sufficient latitude to question witnesses about Gonzalez's abuse, manipulation and control of Arenas and her vulnerabilities to such conduct. More of the same would not have further significantly depreciated Gonzalez in the eyes of this jury or significantly enhanced the jury's impression of Arenas's character for non-violence.

*Willfully Injuring a Child Does Not*

*Preclude Prosecution for Torturing a Child*

Arenas contends the count charging her with torture (§ 206) must be dismissed because the count charging her with willful injury of a child causing great bodily injury (§§ 273d, subd. (a); 12022.7, subd. (d)) is more specific and precludes her prosecution for the more general crime of torture. We disagree.

"[W]here a specific or special statute prohibits the same conduct as a more general statute providing a more serious penalty, and violation of the specific statute will necessarily result in a violation of the more general statute, prosecution under the general statute is precluded. [Citations.]" (*People v. Rackley* (1995) 33 Cal.App.4th 1659, 1665.) Each element of the general statute must correspond to an element on the face of the specific statute. "However, when the general statute contains an element not included in the four corners of the specific statute, the rule will apply if under a review of the entire context, a violation of the specific statute will necessarily and commonly result in a violation of the general statute. [Citation.]" (*Ibid.*) That is not the case here.

5

Torture, as defined in section 206, is an act done "with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in [s]ection 12022.7 upon the person on another . . . ."  The crime does not require the proof of pain.  (*Ibid.*)  Torture does not require the defendant act with premeditation and deliberation, and it does not require that the defendant intend to inflict prolonged pain.  (*People v. Massie* (2006) 142 Cal.App.4th 365, 371-372.)  Torture is a specific intent crime.  "As so defined, torture has two elements:  (1) the infliction of great bodily injury on another; and (2) the specific intent to cause cruel or extreme pain and suffering for revenge, extortion or persuasion or any sadistic purpose.  [Fn. omitted.]"  (*People v. Lewis* (2004) 120 Cal.App.4th 882, 888.)

Corporal punishment or injury of a child as defined in section 273d, occurs when a person "willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition . . . ."  It is a general intent crime.  To prove offense of corporal injury to a child, each of the following elements must be proved:  (1) a person willfully inflicted cruel or inhuman punishment or an injury upon the body of a child; and (2) the infliction of this punishment or this injury resulted in a traumatic condition.  (*People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1160.)

The elements of these crimes are plainly not the same.  Moreover, it is absurd to suggest that by passing section 273d, the Legislature intended to foreclose the prosecution of a person who, through torture, inflicts a great bodily injury on a child and by doing so, extinguishes his or her exposure to the penalty of life in prison.

*Arenas's Statements to Officers Were Admissible*

Officer Miller and Detective Huffman on two occasions at different times advised Arenas of her right not to speak to them.  She said she understood their warning and advice and agreed to proceed with the interview.  About an hour and a half into the interview, while being pressed about inconsistencies in her explanation, Arenas told Detective Huffman, "I can't talk about it."  When asked why, she replied, "Because I don't want to."  When pressed again, she confessed that she burned her daughter's hands.

6

We independently review the question of whether a defendant's statement to investigating officers should be excluded. (*People v. Nelson* (2012) 53 Cal.4th 367, 380.) When a defendant has been given an adequate *Miranda* warning, the invocation during an interrogation of the right to remain silent must be unequivocal and unambiguous. (*Miranda v. Arizona* (1966) 384 U.S. 436; *People v. Williams* (2010) 49 Cal.4th 405, 434, *Berghuis v. Thompkins* (2010) 560 U.S. 370, 371.) In *Williams*, the defendant said, "'I don't want to talk about it'" and the court, considering the remark in context of the entire interrogation, ruled this was not an invocation of a right to remain silent but was instead an expression of frustration with the officer's refusal to accept his repeated denials. (*People v. Williams*, *supra*, at p. 434.) In *People v. Wash* (1993) 6 Cal.4th 215, 237-239, the words, "'I don't know if I wanna talk anymore,'" were construed, in context, not an invocation of the right not to speak to investigators but instead just uncertainty about whether he wants to continue with the interrogation. (See also *People v. Silva* (1988) 45 Cal.3d 604, 629-630; cf., *People v. Peracchi* (2001) 86 Cal.App.4th 353, 361.)

Here, Detective Huffman told Arenas, "[W]e know what happened. I need to know why it happened." Arenas responded, "I can't talk about it," and explained that she could not talk about why it happened because she did not want to. In the context of questioning by medical personnel at Marion Hospital, Officer Miller, Officer Tanore and Detective Huffman, Arenas's statements cannot be construed as an unequivocal invocation of her wish to terminate the interrogation and to remain silent. Arenas simply expressed the sentiment that she could not talk about it and did not want to because she regretted her behavior, her daughter's suffering and feared the consequences of telling the truth to Huffman.

### *Sentencing*

We agree, and the People concede, Arenas is entitled to two additional days of presentence custody credits.

7

*DISPOSITION*

We modify the judgment to reflect Arenas's entitlement to two additional days of presentence custody credits. The superior court shall amend the abstract of judgment to reflect our modification and forward an amended copy to the Department of Corrections and Rehabilitation. As modified, we affirm the judgment in all other respects.

NOT TO BE PUBLISHED.

BURKE, J.[*]

We concur:

YEGAN, Acting P. J.

PERREN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

8

Edward H. Bullard, Judge

Superior Court County of Santa Barbara

_____

Lisa M. Spillman, under appointment by the Court of Appeal, Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.