Filed 9/6/22  P. v. Dhaliwal CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TANDEEP SINGH DHALIWAL,<br><br>    Defendant and Appellant. | H048037<br>(Santa Clara County<br>Super. Ct. Nos. C1806213, C1916266) |

Defendant Tandeep Singh Dhaliwal appeals from a judgment entered after jury trials before different bench officers in two cases.  In the first case, the jury found him guilty of driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), misdemeanor possession of burglary tools (Pen. Code, § 466), and misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  In addition, the court found true that Dhaliwal had suffered a prior strike conviction (Pen. Code, § 1170.12).  In the second case, the jury found him guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) and found true a strike allegation (Pen. Code, § 1170.12).  The second trial court ultimately sentenced Dhaliwal on both cases together.  It imposed the eight-year upper term for the assault count and a consecutive two-year term for the driving or taking a vehicle count.

On appeal, Dhaliwal asserts that in the first trial the trial court abused its discretion in admitting evidence of prior acts under Evidence Code section 1101, subdivision (b) to show intent and knowledge; abused its discretion when it denied his midtrial request to represent himself; prejudicially erred in instructing the jury with CALCRIM No. 376 (possession of recently stolen property); prejudicially erred in instructing the jury to decide whether Dhaliwal was guilty of the driving or taking a vehicle count before deciding whether he was guilty of an alternatively charged count (receiving a stolen vehicle, Pen. Code, § 496d, subd. (a)); and these errors were cumulatively prejudicial. With respect to the second trial, Dhaliwal argues the trial court prejudicially erred in admitting a statement Dhaliwal made after invoking his right to remain silent. For the reasons explained below, we reject these contentions.

In addition, Dhaliwal asserts an amendment to Penal Code section 1170 that requires aggravating factors to be proved to a jury beyond a reasonable doubt applies retroactively to him and requires a remand for resentencing on the assault count. We agree that the recent amendments to Penal Code section 1170 apply but decide that Dhaliwal has not shown prejudicial error. We therefore affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

On November 8, 2018, about 6:30 a.m., Daniel McKannon parked his vehicle in a dirt parking lot on the Stanford University campus. He left his vehicle unlocked with the key in the cup holder between the two front seats. He also left an endorsed check made out to him in the vehicle. McKannon was shuttled from the parking lot to his work site. When McKannon returned to the parking lot about 4:15 p.m., his vehicle was gone.

On November 10, 2018, about 3:40 a.m., San Jose Police Officer Dainius Bunevicius was "running the license plates" of parked cars in a "high-crime" commercial area in San Jose where stolen vehicles were sometimes abandoned "looking for stolen vehicles." A homeless shelter was nearby, and homeless people sometimes congregated in the area.

2

Officer Bunevicius queried 20 or 30 license plates. Dispatch told him that one of the plates belonged to a car that had been reported stolen. It was McKannon's vehicle. Bunevicius initially thought the vehicle was unoccupied because he could not see through its tinted windows. Bunevicius activated his spotlights and then got out of his patrol vehicle to look inside with his flashlight. He saw Dhaliwal sleeping in the driver's seat of the vehicle. No key was in the vehicle's ignition. Bunevicius retreated to his patrol vehicle and summoned assistance, which arrived about one minute later.

The police officers blocked the suspect vehicle with their patrol vehicles and approached it. One of the officers tapped on the window. Dhaliwal awakened, saw them, and "flinched." Dhaliwal was taken into custody and searched. His front left pants pocket contained the check McKannon had left in his vehicle. Dhaliwal's right pocket contained the key to McKannon's vehicle. His back right pants pocket contained a shaved key. A shaved key is used "to start [a] car without the original key." The handle of the shaved key was inscribed " 'Fits Honda cars.' " A bindle containing .70 grams of methamphetamine was found in Dhaliwal's right front coin pocket. The police also found a gallon jug of water and some bags and wrappers in the vehicle.

Dhaliwal was charged by information with driving or taking a vehicle, receiving a stolen vehicle, misdemeanor possession of burglary tools, and misdemeanor possession of methamphetamine. The information also alleged that Dhaliwal had suffered a prior strike conviction and had served prison terms for two prior felony convictions (Pen. Code, § 667.5, subd. (b)).

The defense presented no witnesses at the June 2019 jury trial on these charges.

The jury returned guilty verdicts on the driving or taking a vehicle count and the two possession counts. The jury did not complete the verdict form for the alternative receiving count, which was subsequently dismissed by the trial court. Dhaliwal waived his right to a jury trial on the strike and prison prior allegations. They were tried to the court and found true. The case was continued to September 2019 for sentencing.

3

On August 7, 2019, while Dhaliwal was in custody at the Santa Clara County jail awaiting sentencing for the first case, he and other inmates, including Darren Sanders, were on the "sun deck" of the jail watching television. An incident, which was captured on surveillance video, occurred. Dhaliwal was standing and several other inmates were sitting in chairs as they all watched the television, which was mounted high on a wall. Dhaliwal began arguing with Sanders, who was sitting closest to Dhaliwal and reclining in his chair. Dhaliwal moved closer to Sanders, and the two men continued to argue. Dhaliwal then ran toward Sanders and tried to punch him. Sanders tried to run away, but Dhaliwal chased after him and repeatedly struck him with the assistance of two of the other inmates who had been watching television with them. Once Sanders was on the ground, Dhaliwal repeatedly kicked him. After the altercation, Sanders had a "small welt" next to his eye and bruising and scratching on the back of his head.

Santa Clara County Sheriff's Sergeant Moyse Howard investigated the altercation. He reviewed the surveillance video and attempted to interview the inmates who were involved. Howard spoke to Dhaliwal, and Dhaliwal told him that the altercation was a "mutual combat."

In October 2019, Dhaliwal was charged by information with assault by means of force likely to produce great bodily injury. It was further alleged that he had suffered a prior strike conviction and had served prison terms for four prior felony convictions. The assault case was tried while Dhaliwal was still awaiting sentencing in the first case. Dhaliwal represented himself at trial. The jury convicted him of the assault count. After a bifurcated jury trial on the prior conviction allegation, the jury found it true.

On January 24, 2020, Dhaliwal was sentenced in the first case. The trial court denied his request to strike the prior strike conviction and sentenced him to the lower term of four years in prison. The court did not impose any punishment on the prison priors. On January 29, Dhaliwal was sentenced in the assault case. The court imposed the eight-year upper term for the assault count. The court then resentenced Dhaliwal for

4

the first case to a consecutive two-year term (one-third the midterm), for an aggregate term of 10 years in prison. Dhaliwal timely filed notices of appeal from the judgment in the two cases.

## II. DISCUSSION

### A. *Prior Act Evidence*

Dhaliwal contends that the trial court erred in admitting evidence of his commission of three prior driving or taking a vehicle offenses. The trial court admitted this evidence under Evidence Code section 1101, subdivision (b) to show Dhaliwal's intent and knowledge. He claims that this evidence lacked probative value on those issues and was more prejudicial than probative because he did not contest at trial whether the vehicle was stolen but only whether he was the person who stole the vehicle. Dhaliwal maintains that his "intent was not a disputed issue" in the case.

#### 1. Background

The prosecution sought an in limine ruling on the admissibility of four prior incidents to establish the intent elements of the driving or taking a vehicle count and the possession of burglary tools count and the knowledge elements of the receiving count and the two possession counts.

The prosecutor described these four incidents. The most recent had occurred in July 2017. Dhaliwal was seen driving a stolen Honda, getting out of the Honda, and stealing another car. When he was apprehended shortly thereafter, he had methamphetamine on his person. The next most recent incident occurred on May 25, 2017. After a search, police found a shaved key in his right rear pants pocket and a baggie of methamphetamine in his front coin pocket. The prosecutor argued that the May 25, 2017 incident was relevant to the two possession counts. Prior to that incident, on May 15, 2017, Dhaliwal was seen pushing a stolen car into a parking lot and taking items from the car. Scissors were jammed into the stolen car's ignition, and the car was "on."

5

The stolen car had been taken earlier that day. The oldest incident had occurred in October 2015, when Dhaliwal stole a car that the victim had left idling in his driveway.

Dhaliwal sought to exclude this evidence. He argued that these prior acts were not probative because (1) the only similarities between the prior and current offenses were that a vehicle had been stolen and Dhaliwal was found inside it, and (2) the intent element was "not at issue" because if the jury found that Dhaliwal "did take or drive" the vehicle it would necessarily also find that he had the requisite intent. He claimed the prior acts also had no tendency to prove that he knew the vehicle was stolen. Dhaliwal further argued that the prior acts should be excluded under Evidence Code section 352 even if probative of his intent or knowledge because they were more prejudicial than probative as they would confuse the jury and consume an undue amount of time.

Dhaliwal argued that the July 2017 incident was "similar only in the sense that there's a stolen vehicle in play." He conceded that it was "a fair inference" that possession of a shaved key on May 25, 2017, showed knowledge with respect to the shaved key possessed in the charged offense. But he argued that the jury "might consider this for an improper purpose" and it would be unduly time consuming and confusing to the jury. The defense made essentially the same arguments as to the May 15, 2017 incident, and the prosecution argued that the May 15 incident was relevant to the possession of burglary tools count. As to the October 2015 incident, the defense argued that it was dissimilar and "mere propensity evidence." The prosecutor argued that it was relevant to the intent to permanently deprive and to the knowledge element of the burglary tools count.

The court ruled that the prior incidents would be admissible "to show knowledge, lack of mistake or intent."[1] The trial court stated, "[T]he jury will be instructed that the

---

[1] It is not clear from the record whether the court ruled that the 2015 incident was admissible. In any event, the prosecution did not present evidence at trial concerning the 2015 incident.

6

jury is not to take that information for propensity or as evidence that [Dhaliwal] did the current crime charged, but that it may be used to show his motive or his intent or lack of mistake or his knowledge." The court noted it had "balanced" the relevant factors. It found that the evidence would not be "cumulative, time-consuming," or misleading to the jury and that the probative value of the evidence was not substantially outweighed by the risk of prejudice.

Police officers testified about the May 2017 incidents. On May 15, 2017, at 1:40 a.m., a police officer saw Dhaliwal and a woman pushing a Toyota Camry into a parking lot. The Camry's "ignition was punched with a pair of broken scissors that were inside of the ignition." Dhaliwal pleaded no contest to driving or taking a vehicle for this incident. On May 25, 2017, at 11:30 a.m., a different police officer encountered Dhaliwal and searched him. The officer found a flat-head screwdriver in Dhaliwal's front left pants pocket, a shaved key in Dhaliwal's right rear pocket, methamphetamine in his coin pocket, and a glass pipe in his front right pants pocket. Dhaliwal pleaded no contest to possession of drugs and burglary tools for this incident. The only evidence presented at trial concerning the July 2017 incident was that Dhaliwal had pleaded no contest to two driving or taking a vehicle counts associated with an incident on that date.

The jury was instructed solely on the taking theory of the driving or taking a vehicle count. "To prove that he is guilty of this crime, the People must prove that: [¶] 1. He took someone else's vehicle without the owner's consent; [¶] 2. When he took the vehicle, he intended to permanently deprive the owner of ownership of the vehicle; [¶] AND [¶] 3. The vehicle was worth more than $950. [¶] A 'taking' requires that the vehicle be moved for any distance, no matter how small."

The court gave the jury a limiting instruction on the prior acts evidence. "If you decide that the defendant committed the uncharged acts, you may, but are not required to, consider that evidence for the limited purpose of deciding: [¶] 1. Whether the defendant acted with the intent to permanently deprive a person of their property in Count 1;

7

whether he intended to use the burglar tools to unlawfully enter a vehicle in Count 3; [¶] 2. Whether the defendant knew the substance was methamphetamine in Count 4; [¶] 3. Whether the defendant's actions were not the result of mistake or accident. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged acts and the charged offenses. [¶] Do not consider this evidence for any other purpose except for the limited purpose to prove that defendant had the intent to steal or that his actions were not the result of mistake or accident. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that he committed the uncharged acts, that conclusion is just one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged. The people must still prove each charge beyond a reasonable doubt."

The prosecutor argued to the jury: "When you think about this intended to deprive element, you can use his prior convictions for Vehicle Code [s]ection 10851 . . . you can use the fact that he was previously convicted for taking other people's cars, and in those situations he intended to deprive the owner. You can use that to say I believe that he likely intended to deprive the owner in this case." The prosecutor clarified the limits on the jury's use of this evidence: "You cannot use it to say, well, he did it before, he did it this time. But you can use it to say he intended to deprive those people of their cars previously, and so it's more likely that he intended to deprive them—intended to deprive Mr. McKannon of the car in this scenario."

Dhaliwal's counsel also pointed out the limitations on the use that the jury could make of the prior act evidence. "[T]he only concept with which you can consider the prior conduct is that he acted with the intent to permanently deprive a person of their property. That's all the law allows you to consider. So don't take the shortcut, which is specifically not allowed, and say, 'Well, did it before, did it again.' " Defense counsel

8

argued that the prior acts were "dissimilar." He conceded in closing argument that Dhaliwal had possessed methamphetamine.

### 2. Analysis

Dhaliwal contends that the trial court prejudicially erred in admitting evidence of the prior acts because his "intent was not a disputed issue," and the evidence was "unduly prejudicial" because it was likely to be "used as improper propensity evidence." He also asserts that the admission of the evidence violated his right to due process.

"Evidence Code section 1101, subdivision (a) generally prohibits the admission of evidence of a prior criminal act against a criminal defendant 'when offered to prove his or her conduct on a specified occasion.' Subdivision (b) of that section, however, provides that such evidence is admissible when relevant to prove some fact in issue, such as motive, intent, knowledge, identity, or the existence of a common design or plan. [¶] 'The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.] Evidence may be excluded under Evidence Code section 352 if its probative value is 'substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citation.] 'Because substantial prejudice is inherent in the case of uncharged offenses, such evidence is admissible only if it has substantial probative value.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 22–23; accord *People v. Foster* (2010) 50 Cal.4th 1301, 1331.)

"In order to be admissible to prove intent [or knowledge], the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent [or knowledge] in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "Because this type of evidence can be so damaging, '[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.' " (*People v. Daniels* (1991) 52 Cal.3d 815,

9

856.)  " 'On appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion.' " (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203 (*Whisenhunt*).)

Dhaliwal argues that the admission of the prior act evidence in this case violated Evidence Code section 352 because there was "no dispute as to" his intent because "it was 'beyond dispute that the [auto theft] occurred." His premise for this claim is that his trial defense to the driving or taking a vehicle count was not based on an argument that he lacked the requisite specific intent. But Dhaliwal's trial defense does not define the scope of the prosecution's burden of proof.

"[A] defendant's plea of not guilty puts in issue all the elements of the charged offense." (*Whisenhunt*, *supra*, 44 Cal.4th at p. 204.)  "[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." (*Estelle v. McGuire* (1991) 502 U.S. 62, 69.) Accordingly, the nature of Dhaliwal's trial defense did not eliminate the materiality of the prior act evidence on the intent element of the driving or taking a vehicle count.

Furthermore, we review a trial court's discretionary ruling based on the information before the trial court when it made the ruling.  "We may assess the trial court's ruling only on the facts made known to it at the time it made that ruling. [Citations.]  To do otherwise would require us to hold the trial court to an impossible standard." (*People v. Hernandez* (1999) 71 Cal.App.4th 417, 425.)  Here, the trial court's ruling on the admissibility of the prior act evidence occurred at an in limine hearing, when it was uncertain what Dhaliwal's defense would be at trial.  The trial court was not obligated to require the prosecution to defer presenting relevant evidence on the intent element of the offense until after Dhaliwal had presented his defense at trial.

Dhaliwal relies heavily on this court's decision in *People v. Lopez* (2011) 198 Cal.App.4th 698 (*Lopez*).  In *Lopez*, the defendant was charged with possession of a stolen disabled parking placard, a residential burglary during which two purses were

10

stolen, theft of a radio from a car, theft of a purse from a car, and burglary and using a stolen access card at a store arising from the defendant's use of a credit card taken in the residential burglary in which the purses were stolen. (*Id.* at pp. 703–705.) The defense at trial was that the defendant had nothing to do with the burglaries or thefts and had simply unwittingly received stolen property. (*Id.* at p. 706.) The trial court admitted evidence of the defendant's prior possession of a stolen identification card and a stolen bank card, which had been taken from a car, and his prior possession of a stolen vehicle to show the defendant's "intent to steal" and his knowledge that the property was stolen. (*Id.* at pp. 702–703, 713.) He was convicted of only the two burglary counts. (*Id.* at p. 713.)

The defendant claimed on appeal that the admission of the prior acts evidence violated his due process rights and Evidence Code section 352 because it was "irrelevant to any contested issue at trial" and showed only that he was "a thief" and therefore disposed to commit the charged offenses. (*Lopez*, *supra*, 198 Cal.App.4th at p. 713.) This court restricted its analysis to the first degree burglary count and found that the prior acts evidence lacked "substantial probative value that outweighed its inherent prejudice" as to that count. (*Id.* at p. 715.) "Evidence regarding the [residential] burglary showed that someone entered the kitchen of the [] residence and took two purses. Assuming appellant committed the alleged conduct, his intent in so doing could not reasonably be disputed—there could be no innocent explanation for that act. Thus, the prejudicial effect of admitting evidence of a prior car burglary and prior car theft outweighed the probative value of the evidence to prove intent as to the [residential] burglary charge. [Citation.] [¶] Simply put, evidence of uncharged acts cannot be used to prove something that other evidence showed was beyond dispute; the prejudicial effect of the evidence of the uncharged acts outweighs its probative value to prove intent as it is cumulative regarding that issue." (*Ibid.*)

We read the *Lopez* decision in the context of its facts and deem it distinguishable. Unlike the situation here, the prior acts evidence in *Lopez*, which was solely concerned

11

with items stolen from a car and the theft of a car, was not substantially probative of the defendant's intent when he entered a residence because the prior acts were not substantially similar to the charged residential burglary. The *Lopez* jury's determination of whether the defendant harbored an intent to steal when he entered the residence bore little relationship to his intent when he previously possessed a stolen car and when he previously possessed items stolen from a car.

In contrast, in this case the prior act evidence showed that Dhaliwal had previously illegally taken vehicles, by using a shaved key or another instrument, and had not returned those vehicles to their owners. This evidence supported a finding that his possession of McKannon's vehicle, with a shaved key and McKannon's key in his pocket, was not innocent but the product of his intent to permanently deprive McKannon of the vehicle. Moreover, the same prior act evidence was highly probative with respect to the intent and knowledge elements of the charged receiving stolen property and possession of burglary tools counts. Although Dhaliwal ultimately did not contest those counts at trial, the prosecution was still required to prove those elements. The trial court could have reasonably concluded that the prior act evidence had substantial probative value on these issues.

We reject Dhaliwal's claim that the trial court abused its discretion under Evidence Code section 352 by concluding that the probative value of the prior act evidence was not substantially outweighed by the risk of prejudice. His claim on appeal is that the prior act evidence was potentially prejudicial because the jury was likely to utilize the prior act evidence as propensity evidence. But the trial court could reasonably conclude that the jury was not likely to do so in light of the limiting instructions telling it that, as to the driving or taking a vehicle count, the prior act evidence was limited to the issue of "[w]hether the defendant acted with the intent to permanently deprive a person of their property" and could not be used to show "that the defendant has a bad character or is disposed to commit crime" or for "any other purpose."

12

We decide the trial court did not abuse its discretion when it concluded that Evidence Code section 352 did not require the exclusion of the prior act evidence.

We also reject Dhaliwal's federal due process claim based on *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378. In *McKinney*, a large quantity of evidence showing that McKinney possessed knives and was fascinated by knives and death was admitted at his trial for killing his mother with an unidentified knife. (*Id.* at p. 1382.) The Ninth Circuit found that the admission of this evidence violated due process because there were no permissible inferences that could be drawn from it, and it formed a significant part of the prosecution's case, which was wholly circumstantial. (*Id.* at p. 1385.) In contrast, here the prior act evidence supported permissible inferences concerning the intent and knowledge elements of the charged offenses. Dhaliwal's due process rights were not impacted by the trial court's admission of the relevant and substantially probative prior act evidence.

B. *Self-Representation Request*

Dhaliwal argues that the trial court erred in failing to make an adequate inquiry before denying his midtrial request to represent himself and relying on improper factors.

1. Background

On June 4, 2019, during in limine motions, Dhaliwal repeatedly interrupted the court and tried to speak even after the court told him that he needed to address the court through his attorney. When the trial commenced the next day, Dhaliwal requested a *Marsden*[2] hearing. He told the court "I need another lawyer" because his trial counsel had not committed to ask that the jury be instructed on "lesser included offenses . . . [of] breaking and entering, tampering with a vehicle, [and] any lesser included charge[s]." Dhaliwal also complained about the police department's loss of McKannon's key. The court explained to Dhaliwal that it was too soon to know whether there would be a basis

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

for any lesser included offense instructions. Dhaliwal's attorney noted that the offense Dhaliwal was describing was not a lesser included offense, but he would ask for any lesser included offense instructions that were supported by the evidence at trial.[3] The court denied Dhaliwal's request for a new attorney. On June 6, during the prosecution's case, Dhaliwal interrupted the prosecutor's examination of a witness. In response, the court admonished Dhaliwal.

The next day, after the prosecution had presented the bulk of its case, Dhaliwal informed the court that he wanted to represent himself. The court responded: "I'm denying that request as it's not timely. In order for you to be able to represent yourself at trial, you need to make an advance [request] before the time the trial starts, and right now we're mid-trial, still in the middle of the People's case. And so for that reason, I'm denying your request." Dhaliwal responded: "I just want to recross-examine all the witnesses by myself. I feel comfortable doing the case by myself." The court reiterated: "[Y]ou can't make that motion in the middle of your trial. It's not made on time. So right now I'm denying that request because you didn't make it on time."

The following colloquy then took place: "[Dhaliwal]: Yeah. I want to fire him and represent myself. That's what I want to do. [¶] If the second hearing happens and I fire him and I get a different lawyer, then is it possible a change of venue or something? Like a different judge, maybe, perhaps? You know, I just want to represent myself. I don't want to do eight, ten years. It's not in my best interest. [¶] [The Court]: Well, I can understand, but we're not even at that point yet. Right now we're at the point -- [¶] [Dhaliwal]: There's some questions that are missed and some objections I feel like weren't brought forward at the time. And I just kind of let it go on and -- so, the DA's case -- I don't understand. I just want to represent myself and ask some certain questions and bring them to light in front of the jury."

---

[3] The court later pointed out to Dhaliwal that the driving or taking a vehicle count had no lesser included offenses.

Dhaliwal listed a number of questions he wanted to ask and lines of inquiry he wanted to pursue. Dhaliwal argued that he was aware of cases in which a person was found in a stolen car but acquitted of a driving or taking a vehicle count. He also argued that his prior convictions were too prejudicial. The court told him: "So the factors that I have to look at when making the decision is: The time between the time that you make the motion and the scheduled trial date; if you are ready to go to trial; the number of witness[es] and the reluctance or availability of witness[es]; how complex the case is; any ongoing pretrial proceedings; and if you could have made your request earlier." "Half of these elements are too late because we're in the middle of trial. And so for that reason, based on those cases, I am going to deny the request."

Dhaliwal continued addressing the court, asserting that the evidence did not prove his guilt and that he believed that "questions and objections . . . that haven't been made" should have been made. He repeatedly refused to stop speaking even when his attorney asked him to stop.

The court asked him if he wanted another *Marsden* hearing. Dhaliwal stated that he wanted "to fire my lawyer" because he wanted "to represent myself because I know what I did. I know how my life and people in my life react to certain situations, and how the jury would have heard it. You know, if I would have brought out some factors. Because he doesn't know what a homeless person is. He doesn't know what a criminal does. He's a lawyer. He doesn't even know the questions to ask. I'm in that life, so I would have brought forward a lot of things in life. That's why I wanted to represent myself." Dhaliwal confirmed that he did not want another *Marsden* hearing and said, "[H]e knows the case better than a new attorney that's going to come."

After this interlude, the prosecutor called her final witness. On cross-examination, Dhaliwal's trial counsel asked the witness: "[H]as there ever been an incident where you responded to an incident where a homeless person had broken into a car just to go to sleep?" She responded: "Yes." The defense did not call any witnesses. Dhaliwal's

15

counsel argued to the jury that Dhaliwal was homeless and simply entered McKannon's vehicle to use it as a place to sleep.

2. Analysis

"[O]nce a defendant has chosen to proceed to trial represented by counsel, demands by such defendant that he be permitted to discharge his attorney and assume the defense himself shall be addressed to the sound discretion of the court. When such a midtrial request for self-representation is presented the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*).) Although the trial court is obligated to inquire into the defendant's reasons for the request, the court is not required to make a record of its reasons for denying it. (*Id.* at p. 129, fn. 6.)

Dhaliwal asserts that the trial court abused its discretion by denying his request solely because it was untimely instead of considering all of the appropriate factors. He argues that, because the court "did not make the appropriate inquiry," we do not have an adequate record upon which we can base our review of the trial court's ruling. Dhaliwal also contends that the reasons the trial court gave for its ruling were not based on the relevant factors and therefore demonstrate that the court relied on improper factors.

We agree the trial court should have made an express inquiry into the reasons for Dhaliwal's request to represent himself. (See *Windham*, *supra*, 19 Cal.3d at p. 128.) Nevertheless, the trial court's failure to do so did not result in an inadequate record for us to review the trial court's exercise of its discretion. The record before us includes all of

16

the necessary information about both Dhaliwal's reasons for making the request and the other relevant factors that the trial court was required to consider.

Three days before the trial court denied Dhaliwal's request, the court held a *Marsden* hearing, heard Dhaliwal's complaints about his trial counsel, and evaluated trial counsel's performance. The trial court had already permitted Dhaliwal to explain his reasons for not wanting to be represented by his counsel and evaluated "the quality of counsel's representation of the defendant." (*Windham*, *supra*, 19 Cal.3d at p. 128.) The prior *Marsden* hearing also demonstrated "the defendant's prior proclivity to substitute counsel." (*Ibid.*)

The record unambiguously demonstrates "the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham*, *supra*, 19 Cal.3d at p. 128.) Dhaliwal's request was not made until the trial was nearly over. Dhaliwal's extended colloquy with the court at the time that the court denied his request illustrates that granting the request would have resulted in disruption and delay to the trial. Dhaliwal repeatedly told the trial court that he wanted to represent himself because he wanted "to *recross-examine all the witnesses* by myself," (italics added) ask "questions that weren't asked," make "a lot of objections haven't been made," and try to obtain "a change of venue or something" "[l]ike a different judge."

We decide the trial court did not abuse its discretion in denying Dhaliwal's midtrial request to represent himself.

C. *CALCRIM No. 376*

Dhaliwal contends that the trial court violated his constitutional rights by instructing the jury with CALCRIM No. 376. He acknowledges that this court and the California Supreme Court have rejected challenges to this instruction and its predecessor, but he argues that "the specific facts here" demonstrate that the instruction improperly reduces the prosecution's burden of proof.

17

1. <u>Background</u>

The jury was instructed with CALCRIM No. 376: "If you conclude that the defendant knew that he possessed property and you conclude that the property had in fact been recently stolen, you may not convict him of Count 1, vehicle theft, based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove that he committed vehicle theft. [¶] The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where and when the circumstances tending [*sic*] to prove his guilt of vehicle theft. [¶] Remember, you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

The prosecutor noted in her argument to the jury, with regard to Dhaliwal's possession of McKannon's vehicle: "[I]f you were to have only that piece of evidence, maybe that's not enough. But th[at]'s not all you have. You have that he had a shaved key in his pocket. That he had the victim's check in his pocket. And that he had the key to the car in his pocket."

2. <u>Analysis</u>

Dhaliwal concedes that this court upheld CALCRIM No. 376 in *Lopez.* In *Lopez,* the defendant claimed that CALCRIM No. 376 improperly reduced the prosecution's burden of proof because the instruction required only " 'slight' " supporting evidence to support an inference that the defendant had stolen the property based on his possession of recently stolen property. (*Lopez*, *supra*, 198 Cal.App.4th at p. 711.) This court determined that the instruction was proper because it required supporting evidence, reiterated the prosecution's burden of proof, and was not reasonably likely to be misinterpreted by the jury. (*Id.* at pp. 711–712.) The validity of CALCRIM No. 376 also has been upheld in a driving or taking a vehicle case. (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574–1577.) Furthermore, CALCRIM No. 376 is "indistinguishable"

18

from CALJIC No. 2.15 (*People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1036), which the California Supreme Court has repeatedly upheld in the face of similar challenges. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 188 [upholding CALJIC No. 2.15 against challenge that it reduced prosecution's burden of proof].)

Dhaliwal asserts that CALCRIM No. 376 should not have been given on these facts because he was found in the vehicle two days after it was stolen in another city. Dhaliwal asserts that the instruction permitted the jury to find him guilty of the driving or taking a vehicle count "without a finding that he took the car, or intended to deprive the owner of the car."

We disagree. A rational jury could have concluded that the permissive inference that Dhaliwal had taken the vehicle was proper because Dhaliwal was found in the car with McKannon's check and the vehicle's key in his pocket less than 48 hours after vehicle was taken from a nearby city. The instruction did not require the jury to draw such an inference; it merely permitted it. Furthermore, the instruction explicitly told the jury that it may not convict Dhaliwal of the driving or taking a vehicle count "unless you are convinced that each fact essential to the conclusion that [Dhaliwal] is guilty of that crime has been proved beyond a reasonable doubt." We reject Dhaliwal's challenge to the trial court's use of CALCRIM No. 376 in instructing the jury in this case.

D. *Instruction on Alternative Counts*

Dhaliwal contends that the trial court prejudicially erred in instructing the jury as to the order by which they may consider the offenses because the court's instruction suggested that the jury could consider the receiving count only after it acquitted Dhaliwal of the driving or taking a vehicle count, and the court did not expressly tell the jury that it could consider the two alternative counts simultaneously.

1. Background

The jury was instructed that it must decide the four charged counts, which included the driving or taking a vehicle count and the receiving a stolen vehicle count.

19

The jury was also instructed with CALCRIM No. 3516, which was entitled: "Multiple Counts: Alternative Charges for One Event—Dual Conviction Prohibited." The court told the jury: "[Dhaliwal] is charged in Count 1 with vehicle theft and in Count 2 with receiving stolen property. You must first decide whether or not he is guilty of Count 1, vehicle theft. If you find that he is guilty of Count 1, you must not sign the verdict form for Count 2. If you find him not guilty of Count 1, you must then decide whether or not he [is] guilty of the Count 2. Bottom line is you can't find him guilty of both Count 1 and Count 2."[4]

The prosecutor told the jury: "[W]hen you go back into the jury room, you have Count 1 and Count 2, and as you heard from the judge in the jury instruction, you cannot find the defendant guilty of both. So what I would suggest to you is to go back there, go through Count 1, make a decision about whether you find him guilty or not guilty. My hope is that you will get through that discussion, you will find him guilty because the evidence proves beyond a reasonable doubt that he is guilty. And if that's the case, then you fill out the verdict form for Count 1 and you circle guilty. And then you skip Count 2 because you cannot find him guilty of Count 1 and Count 2. [¶] If you were to find him not guilty on Count 1, then you move on to Count 2, and you then go through your discussion about whether he's met all the elements for Count 2." "[T]he defendant is guilty of Count 1, the defendant is guilty of Count 2, although I hope you don't get to make that decision." "I ask you to return a guilty verdict for Count 1, Count 3, and Count 4."

_____

[4] The written instruction was slightly different and lacked the final sentence of the court's oral instruction. The written instruction read: "[Dhaliwal] is charged in Count 1 with Vehicle Theft and in Count 2 with Receiving Stolen Property. [¶] You must first decide whether he is guilty of Count 1, Vehicle Theft. [¶] If you find him guilty of Count 1, you must not sign the verdict form for Count 2. [¶] If you find him not guilty of Count 1, you must then decide if he is guilty of Count 2."

20

2. Analysis

Dhaliwal argues that the trial court's instruction conflicted with *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*). In *Kurtzman*, the California Supreme Court approved of "an instruction that the jury may not return a verdict on the lesser offense unless it has agreed beyond a reasonable doubt that defendant is not guilty of the greater crime charged." (*Id.* at p. 329.) The court disapproved of the trial court's instruction to the jury that it must " 'deliberate . . . first' " on second degree murder " 'before considering voluntary manslaughter.' " (*Id.* at p. 328.)

Although *Kurtzman* dealt with instructions concerning a greater offense and a lesser included offense, Dhaliwal contends, relying on this court's decision in *People v. Olivas* (2016) 248 Cal.App.4th 758, that the holding in *Kurtzman* also applies to alternative counts, such as those at issue here. In *Olivas*, the defendant was charged with alternative counts. The jury asked the court " 'are we able to consider the alternative count' " if " 'we are "hung" on' " its corresponding count. (*Id.* at p. 772.) The court responded: " 'No.' " (*Ibid.*) This court "assume[d]" that *Kurtzman* applied to alternative counts (*id.* at p. 774), found that the trial court had violated the holding in *Kurtzman*, found the error prejudicial, and reversed the judgment. (*Id.* at pp. 774–777.)

Dhaliwal's argument that the trial court's instruction conflicted with the holding in *Kurtzman* fails because the trial court's instruction in this case did not bar the jury from considering the receiving count at the same time it considered the driving or taking a vehicle count. Dhaliwal claims that the trial court's instruction had the same effect as the court's erroneous instructions in *Kurtzman* and *Olivas*. We disagree.

The trial court's instruction here was consistent with *Kurtzman*'s holding that it is proper to instruct a jury that it "may not return a verdict on the lesser offense unless it has agreed beyond a reasonable doubt that defendant is not guilty of the greater crime charged." (*Kurtzman*, *supra*, 46 Cal.3d at p. 329.) The trial court here told the jury only that it "must first decide whether or not he is guilty of Count 1" and "can't find him

21

guilty of both Count 1 and Count 2." Unlike the trial courts in *Kurtzman* and *Olivas*, the trial court's instruction in this case said nothing to suggest the jury was precluded from considering the two counts at the same time. Consequently, we decide there was no error in the trial court's instruction on this point. Although Dhaliwal points to the prosecutor's suggestion in her argument to the jury, he identifies no authority barring the prosecutor from suggesting that the jury consider one alternative count before another. The prosecutor's suggestion did not preclude the jury from considering the two counts at the same time. The trial court did not err in giving this instruction.

### E. *Cumulative Prejudice*

Dhaliwal argues that there was cumulative prejudice from errors at the first trial. As we have found no errors, there is no prejudice to cumulate.

### F. *Dhaliwal's Statement*

Dhaliwal asserts that the trial court prejudicially erred at the assault trial when it found that his " 'mutual combat' " statement to Sergeant Howard was admissible. He contends that this statement was the inadmissible product of custodial interrogation after he had invoked his right to remain silent.

#### 1. Background

Dhaliwal was interviewed by Sergeant Howard at the jail on August 9, 2019. Howard told Dhaliwal "I'm here to talk to you about the fight" and then informed Dhaliwal of his rights. After Dhaliwal acknowledged his rights, Howard asked him "so what, what happened the other day, man?" This exchange followed: "DHALIWAL Uh, I'll, sh-, yeah. I can't really, dude, I don't really want to talk about this, like you know what I mean, 'cause— [¶] HOWARD Mm-hmm. [¶] DHALIWAL But uh, I don't really wanna talk about it, I can't speak on it, I thought, I, I don't know like what am, am I being charged with something, or— [¶] HOWARD Well, no, I'm just tryin' to figure out what happened in the fight. [¶] DHALIWAL Uh— [¶] HOWARD You know, you know which fight I'm talkin' about, right, the one on Sunday, with you and the other two

22

gentlemen? [¶] DHALIWAL Uh— [¶] HOWARD Where you guys jumped Mr. Sanders, where you guys were fighting with Mr. Sanders? [¶] DHALIWAL Well, uh, I, I, I mean I really like, fuck, man, this uh, like I can't talk about this shit, man, I can't say anything on this shit. Like I don't, like you know what I mean, but uh, I can't talk about this. [¶] HOWARD You— [¶] DHALIWAL I wanna plead the 5th, I mean, I, you know what I mean? [¶] HOWARD So you wanna plead the 5th and you don't . . . [¶] DHALIWAL Yeah, but— [¶] HOWARD You don't wanna talk about the incident? [¶] DHALIWAL No, I do, I can't, I don't wanna talk about the incident, just— [¶] HOWARD Okay. Okay, no problem."

Without further questioning by Sergeant Howard, Dhaliwal then stated: "Isn't, isn't it, isn't, okay, according to the uh, well, well, I got upper class, isn't this considered a mutual combat and that's it, like—" A brief discussion ensued between Dhaliwal and Howard that ended with Dhaliwal confirming that he did not want to discuss the incident. The entire encounter between Howard and Dhaliwal was videorecorded.

During in limine discussions, the prosecutor disclosed that she planned to introduce Dhaliwal's "mutual combat" statement to Sergeant Howard, which she conceded had occurred after Dhaliwal had invoked his right to remain silent. The trial court ordered that there be a hearing on the admissibility of the statement. At the hearing, Howard testified that the video of the interview was accurate. On cross-examination, Howard testified that he did not know what Dhaliwal meant by "mutual combat." The prosecutor proposed that Howard testify solely to the "mutual combat" statement. Dhaliwal objected on the ground that Howard did not know what Dhaliwal meant by "mutual combat." The prosecutor argued that Dhaliwal's "mutual combat" statement was admissible because it was "not in response to further questioning, and therefore there is no *Miranda* violation." The court found that Dhaliwal had "clearly indicated you didn't want to talk about it . . . and then when he got up to leave, you volunteered that one

23

statement and that one statement [] only." The court ruled that the "mutual combat" statement only was admissible.

In his opening statement at the second trial, Dhaliwal (who was representing himself) told the jury that "it's a self defense case" because he had to defend himself against Sanders's verbal threats and name-calling or he would "be victimized." Sergeant Howard testified that Dhaliwal had made the "mutual combat" statement. Dhaliwal elicited Howard's testimony that Howard did not believe that the altercation was mutual combat because Dhaliwal "swung at [Sanders] first" and kicked Sanders after he fell to the ground.

The prosecutor argued to the jury that the video of the assault showed that Dhaliwal had punched Sanders 27 times and kicked him 12 times. She mentioned the "mutual combat" statement and argued that "[t]here's no mutual combat here" because Sanders did not fight back. Dhaliwal argued to the jury that the video showed that Sanders "tries to jab back." He maintained that Sanders had started an argument with him and was "a persistent threat" to him. Dhaliwal asserted that he had acted in self-defense.

2. Analysis

On appeal, Dhaliwal asserts that he invoked his right to remain silent "immediately" after he was informed of his rights, but Sergeant Howard "continued the interrogation" until after Dhaliwal "explicitly cited the Fifth Amendment." This is the premise for his claim that Howard continued to interrogate him after his invocation. We disagree.

"[A] suspect's *invocation* of *Miranda* rights must be 'unambiguous[]' from the perspective of a reasonable officer. [Citation.] If 'a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right,' then the officer need not cease all questioning immediately. [Citation.] Whether or not a reasonable officer would perceive a suspect's statement as ambiguous may depend on

24

context. [Citations.] ' "[W]hen a suspect under interrogation makes an ambiguous statement that could be construed as an invocation of his or her *Miranda* rights, 'the interrogators may *clarify* the suspect's comprehension of, and desire to invoke or waive, the *Miranda* rights.' " ' " (*People v. Flores* (2020) 9 Cal.5th 371, 417.)

In this case, the context reflected that Sergeant Howard could reasonably perceive as ambiguous Dhaliwal's statements expressing reluctance to discuss the incident. As Dhaliwal acknowledges, "if a defendant expresses ambiguous remarks falling short of a clear waiver or invocation of his *Miranda* rights, the officers may continue talking with him for the limited purpose of clarifying whether he is waiving or invoking those rights." (*People v. Johnson* (1993) 6 Cal.4th 1, 27.) That is what happened here.

Dhaliwal made a number of statements without any questioning from Sergeant Howard and then asked Howard "am I being charged with something," to which Howard responded. Dhaliwal continued in the same vein, without any questioning by Howard, until Dhaliwal stated that he wanted to "plead the 5th." Howard's only question sought solely to clarify that Dhaliwal did not want to talk to him. Howard asked no further questions, and then Dhaliwal spontaneously made the "mutual combat" statement. We see no impropriety in Howard's attempts to clarify Dhaliwal's ambiguous statements.

Dhaliwal's reliance on *People v. Peracchi* (2001) 86 Cal.App.4th 353 is misplaced. In that case, after the defendant was informed of his rights, the officer asked him " ' "do you want to talk to us now," ' " and the defendant responded, " ' "I don't think so." ' " (*Id.* at p. 358.) The officer asked him " ' "[w]hy" ' " he did not want to talk and continued to press the defendant to explain his "reason" for not wanting to talk. (*Ibid.*) It was only after the officer continued to question the basis for the defendant's decision not to talk that the defendant made admissions. (*Id.* at p. 359.) On appeal, the Fifth District Court of Appeal acknowledged that the defendant's initial " 'I don't think so' " response was ambiguous, but it found that the officer's further questions were not proper attempts to clarify whether the defendant understood his rights or was invoking

25

his right to silence but instead were improper inquiries into his reasons for remaining silent. (*Id.* at p. 361.)

*Peracchi* does not assist Dhaliwal here. Dhaliwal's initial statements to Sergeant Howard were ambiguous: "I don't really wanna talk about it, I can't speak on it, I thought, I, I don't know like what am, am I being charged with something, or—" Howard properly responded to Dhaliwal's inquiry by telling Dhaliwal that Howard was investigating the "fight" with "Mr. Sanders." When Dhaliwal responded that he "can't talk about this" and "wanna plead the 5th," Howard confirmed that Dhaliwal did not want to talk to him and said "Okay, no problem." It was at this point that Dhaliwal made the "mutual combat" statement, which was not in response to any question by Howard.

*Peracchi* does not conflict with the trial court's finding that Dhaliwal's "mutual combat" statement was not the product of a violation of Dhaliwal's right to remain silent. We decide that the trial court did not err in ruling that the "mutual combat" statement was admissible.

G. *Imposition of Aggravated Term*

Dhaliwal argues that amendments to Penal Code section 1170, which took effect on January 1, 2022, and altered the requirements for imposition of an upper term, apply retroactively to this case and necessitate a remand for resentencing.[5]

1. Background

The probation report prepared for Dhaliwal's sentencing discussed a number of factors relevant to the sentence imposed by the trial court on the assault count.

The probation report for the assault case described Dhaliwal's reaction to the verdict. He was "verbally abusive of the Jury, Court and [the prosecutor]," "was therefore removed from the Court, at which time he kicked and spat on a deputy." The

---

[5] Unspecified statutory references are to the Penal Code.

report stated that Dhaliwal had "a history of prior incidents of being removed from Court, assaulting staff and being involved in physical altercations with other inmates."

The probation report also recounted that Dhaliwal's 2010 robbery (his strike prior) was of a blind man. Dhaliwal had violated probation, parole, and postrelease community supervision (PRCS) on multiple occasions. Dhaliwal had spent "a large majority of his life" on probation, PRCS, parole, or in custody. The probation report recommended the aggravated term. It identified the aggravating factors as the five factors listed in California Rules of Court, rule 4.421(b) and identified no mitigating factors.[6]

At the sentencing hearing for the assault case, the court said: "The court has considered the factors in mitigation and aggravation, specifically, the court finds there are no statutory factors in mitigation." "As to [the] statutory factors in aggravation, the defendant-related factors rule 4.421(b)(1), (b)(2), (b)(3), (b)(4) and (b)(5) all are applicable and apply; that the offense the defendant committed, he engaged in while in custody. He has a significant number of prior convictions and prison commitments. [¶] He was on PRCS, as we heard, at the time of the offense. His performance on probation and PRCS has been unsatisfactory. Factors in aggravation outweighing the factors in mitigation, the court is going to impose the upper term of eight years and that will be the total term for that information of eight years."

The record contains certified abstracts reflecting Dhaliwal's convictions for driving or taking a vehicle three times in 2017, once in 2016, and once in 2013, and his 2011 conviction for the 2010 robbery.

### 2. Analysis

The Attorney General concedes that the amendments to section 1170 apply retroactively to Dhaliwal. We agree. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.) Nevertheless, the

---

[6] Rule references are to the California Rules of Court.

Attorney General contends that a remand for resentencing is not necessary because the trial court based its selection of the upper term "on appellant's prior criminal history," which the Attorney General asserts is permitted by amended section 1170. Dhaliwal concedes that some "aspects of [his] criminal history" were properly considered by the trial court as aggravating circumstances under amended section 1170, but he argues that remand is required because the court also considered other aggravating circumstances that it could not properly consider under amended section 1170. He claims that remand is required because the record does not " 'clearly indicat[e]' " that the court would have selected the upper term if it had properly applied amended section 1170.

Current section 1170, subdivision (b)(1) directs a trial court to impose not more than the middle term of a sentencing triad "except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).) Paragraph (2) provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).) Paragraph (3) provides: "Notwithstanding paragraphs (1) and (2) [of section 1170, subdivision (b)], the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

Section 1170, subdivision (b)(4) provides: "The court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to [s]ection 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (§ 1170, subd. (b)(4).) However, section 1170, subdivision (b)(4) does not permit the court to impose an upper term without compliance with section 1170, subdivision (b)(2). Under section

28

1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (*Id.*, subd. (b)(5).)

The trial court imposed the upper term based on its findings that the five aggravating factors set forth in rule 4.421(b) "are applicable and apply." Those factors are: "(1) The defendant has engaged in violent conduct that indicates a serious danger to society; [¶] (2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [¶] (3) The defendant has served a prior term in prison or county jail under section 1170[, subdivision] (h); [¶] (4) The defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed; and [¶] (5) The defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." (Rule 4.421(b).) The court also identified as an aggravating factor "that the offense the defendant committed, he engaged in while in custody."

The current version of section 1170, subdivision (b) (hereafter section 1170(b)) requires, with but one exception, that all aggravating circumstances relied upon to impose an upper term must be proved to a jury beyond a reasonable doubt or stipulated to by the defendant. The one exception is that "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The only factor relied upon by the trial court to which this exception applies is rule 4.421(b)(2). The certified records of Dhaliwal's prior convictions established that he had "numerous" prior convictions.

We disagree with the Attorney General's claim that the exception for prior convictions proved by a certified record of conviction permits a trial court to rely on

29

"criminal history" factors that depend on facts other than certified records of prior convictions. Accordingly, several of the factors relied upon by the trial court could not properly be considered under amended section 1170(b). The factors identified in rule 4.421(b)(1), (b)(3), (b)(4), and (b)(5) do not depend solely on certified records of prior convictions. Nor does the fact that "the offense the defendant committed, he engaged in while in custody."

However, upon a close examination of the record, we are convinced that the second trial court would have imposed the upper term even if it had applied amended section 1170(b). Although the fact that the assault occurred while Dhaliwal was in custody was not found true by a jury beyond a reasonable doubt, this fact was undisputed. It is inescapable that the jury here would have found the fact true beyond a reasonable doubt, as the jail assault was captured on video and shown to the jury at trial. Hence, had the second trial court applied amended section 1170(b), it would have been able to properly consider both that fact and the fact of Dhaliwal's numerous prior convictions, which included his prior robbery conviction.

While Courts of Appeal are divided as to the appropriate harmless error standard to apply in reviewing sentences imposed before amended section 1170(b) took effect, we are convinced that under any standard the second trial court's failure to apply amended section 1170(b) was harmless. Even the more stringent of these standards is satisfied here because the record clearly indicates that the trial court would have imposed the same sentence under amended section 1170(b). A remand is not necessary if "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion" under a subsequently amended statute. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) This is true because "remand is not appropriate when it would be an idle act." (*People v. Jefferson* (2019) 38 Cal.App.5th 399, 409.)

Here, the two properly considered factors largely subsumed the improperly considered factors. We decide that the record in this case clearly indicates that, had the

second trial court understood that its selection of the upper term could rest on only those two factors, it still would have imposed the upper term on Dhaliwal.

The second trial court explicitly found no factors in mitigation. At his sentencing, Dhaliwal called the judge "a [expletive] liar" and said the judge was "not a real judge" and then left the courtroom before the trial court had sentenced him. At sentencing, the court stated that it "can't begin to say that the interest of justice would have guided the court to striking the strike or deeming the offense a misdemeanor."

Further, the second trial court took the step of resentencing Dhaliwal on the first case and making the assault count the principal term, which unerringly displayed the court's intention to impose the longest possible term. The driving or taking a vehicle count and the assault count had the same sentencing triad of two, three, or four years, which was doubled due to Dhaliwal's strike. The first trial court had imposed the lower term of four years for the driving or taking a vehicle offense. By selecting the assault charge as the principal term, resentencing Dhaliwal, and making the two sentences consecutive, the second trial court ensured that Dhaliwal would serve the maximum possible sentence for the two cases. On this record, we decide that Dhaliwal cannot show prejudicial error based on the amendments to section 1170(b).

### III. DISPOSITION

The judgment is affirmed.

_____
                     Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H048037**
*People v. Dhaliwal*